J-S05044-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN RE: ADOPTION OF B.M.M., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: J.M., NATURAL FATHER | : | No. 1547 WDA 2017 |

Appeal from the Order Entered October 11, 2017
in the Court of Common Pleas of Cambria County
Orphans' Court at No(s): 2017-596 IVT

BEFORE: OLSON, OTT, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.: FILED MARCH 28, 2018

J.M. (Father) appeals from the order entered October 11, 2017, in the Court of Common Pleas of Cambria County, which terminated involuntarily his parental rights to his minor son, B.M.M. (Child). We affirm.

Child was born to Father and A.S. (Mother) in March 2013. Father and Mother lived together for about a year before Mother became pregnant, but separated four months later. Father and Mother resumed living together in July or August 2013, but separated again in September or October 2014, when Child was about one and a half years old.

Following her separation from Father, Mother filed a protection from abuse (PFA) petition.[1] The parents entered into a PFA order by agreement, which prohibited Father from contacting Mother, but made no finding of abuse. Mother also filed a child custody complaint. Mother received primary physical

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 23 Pa.C.S. §§ 6101-6122.

custody of Child, while Father received supervised partial physical custody for two days each week and every other weekend.

This arrangement continued until approximately October 2015, when the parents entered into an interim consent order reducing Father's supervised partial physical custody to every other Saturday. Following a hearing in December 2015, the trial court in the custody matter entered an order providing Father with one final supervised visit on Christmas Eve, and suspending all other partial physical custody. The court suspended Father's custody based on a variety of concerns, including his illegal substance abuse, mental health issues, and numerous retail theft convictions. However, the court provided that Father could have a daily phone call with Child. Father has not seen Child or spoken with him on the phone since the Christmas Eve visit in 2015.

Meanwhile, Mother began a relationship with J.S. (Stepfather). Mother and Stepfather began dating in November 2014, and married in August 2015. They have one biological child together, Child's younger half-brother, C.S., born in August 2016.

On July 3, 2017, Petitioners filed a petition to terminate Father's parental rights to Child involuntarily. The orphans' court conducted a termination hearing on September 27, 2017, and October 4, 2017.[2] Following

_____

[2] Child had the benefit of legal counsel during the termination hearing. We note with displeasure that Child's legal counsel did not file a brief or otherwise advocate Child's position in this Court.

J-S05044-18

the hearing, on October 11, 2017, the court entered an order terminating

Father's parental rights. Father timely filed a notice of appeal on October 16,

2017, along with a concise statement of errors complained of on appeal

pursuant to Pa.R.A.P. 1925.

Father now raises the following issues for our review.

1. Whether the [orphans' c]ourt erred in terminating [Father's] parental rights to [C]hild, because the Petitioners failed to meet their burden by clear and convincing evidence, including, but not limited to failing to identify how termination of [Father's] parental rights would impact [C]hild, in particular, the bond between [Father] and [C]hild.

2. Whether the [orphans' c]ourt erred in terminating [Father's] parental rights to [C]hild, because the [c]ourt did not adequately weigh the barrier placed between [Father] and the Petitioners, due to the Petitioners' failure to permit [Father] to have phone contact with [C]hild per the terms of their custody order.

Father's Brief at 3 (suggested answer omitted).

We consider Father's claims mindful of our well-settled standard of

review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

- 3 -

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks

omitted).

Termination of parental rights is governed by section 2511 of the

Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent.  The party
> seeking termination must prove by clear and convincing evidence
> that the parent's conduct satisfies the statutory grounds for
> termination delineated in [subs]ection 2511(a).  Only if the court
> determines that the parent's conduct warrants termination of his
> or her parental rights does the court engage in the second part of
> the analysis pursuant to [subs]ection 2511(b): determination of
> the needs and welfare of the child under the standard of best
> interests of the child.

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights

pursuant to subsections 2511(a)(1) and (b), which provide as follows.

> (a) General Rule.—The rights of a parent in regard to a child
> may be terminated after a petition filed on any of the following
> grounds:

> > (1)  The parent by conduct continuing for a period of
> > at least six months immediately preceding the filing of
> > the petition either has evidenced a settled purpose of
> > relinquishing parental claim to a child or has refused
> > or failed to perform parental duties.

> * * *

> (b) Other considerations.  The court in terminating the rights
> of a parent shall give primary consideration to the developmental,
> physical and emotional needs and welfare of the child.  The rights
> of a parent shall not be terminated solely on the basis of
> environmental factors such as inadequate housing, furnishings,
> income, clothing and medical care if found to be beyond the
> control of the parent.  With respect to any petition filed pursuant

to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

We first address whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to subsection 2511(a)(1). To meet the requirements of this section, "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." In re Z.S.W., 946 A.2d 726, 730 (Pa. Super. 2008) (citing In re Adoption of R.J.S., 901 A.2d 502, 510 (Pa. Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to analyze subsection 2511(b). Id. (quoting In re Adoption of Charles E.D.M., 708 A.2d 88, 92 (Pa. 1998)).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." In re B.,N.M., 856 A.2d 847, 855 (Pa. Super. 2004) (quoting In re C.M.S., 832 A.2d 457, 462 (Pa. Super. 2003)). Rather,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in

the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

Id. (citations omitted).

In its order terminating Father's parental rights, the orphans' court found that Father refused or failed to perform parental duties during the six months immediately preceding the filing of the termination petition on July 3, 2017. Order, 10/11/2017, at ¶ 10-11. The court reasoned that Father last saw Child in December 2015, and made only one attempt to call Child on the phone. Id. at ¶ 6. The court rejected Father's testimony that Mother created "roadblocks" to prevent him from maintaining contact with Child. Id. at ¶ 9. The court reasoned that Father "took no reasonable action at all to overcome these roadblocks, if indeed they existed." Id.

On appeal, Father acknowledges that he last saw Child in December 2015, but blames his lack of contact on Mother. Father's Brief at 5. Father argues that Mother changed her phone number, which prevented him from calling Child pursuant to the December 2015 custody order. Id. at 16-18.

After a thorough review of the record in this matter, we conclude that the orphans' court did not abuse its discretion. During the termination hearing, Mother testified that the parties' PFA order prohibited Father from contacting her directly. N.T., 9/27/2017, at 32. However, Child's maternal grandmother (Maternal Grandmother) served as a liaison to coordinate

Father's contact with Child.[3]  N.T., 9/27/2017, at 32.  Mother testified that Father last saw Child in December 2015, and that Father contacted Maternal Grandmother to request a phone call with Child only once in December 2016. Id. at 13, 18-19.  Mother stated that she did not act on Father's request because she did not want to confuse Child, and because "I didn't feel like it was right not going through the courts since after his visitation was canceled, everything should have went through the courts."[4]  Id. at 26, 28.  Mother testified that Father never filed for additional partial physical custody of Child. Id. at 13.

Similarly, Maternal Grandmother testified that Father never provided her with cards, gifts, or anything else for Child, and contacted her only once after the December 2015 custody hearing.  Id. at 40, 48.  Maternal Grandmother clarified that this contact took place in March 2016.  Id. at 40. Father contacted Maternal Grandmother using Facebook, and asked to speak with Child on the phone or using FaceTime.  Id.  Maternal Grandmother directed Father that "he would have to go through the courts to get another hearing."  Id. at 41.  Maternal Grandmother further clarified that she received a phone call from Child's paternal grandmother in December 2016.  Id. at 42-

_____

[3] Maternal Grandmother has lived in the same home and maintained the same phone number since Mother and Father were dating.  N.T., 9/27/2017, at 18-19, 42, 48.

[4] Both Mother and Maternal Grandmother testified that they did not realize that Father was entitled to phone calls pursuant to the custody order.  N.T., 9/27/2017, at 27-28, 41-42.

- 7 -

43. Child's paternal grandmother requested visitation for herself and Child's paternal grandfather, but "[s]he didn't say anything about [Father]." Id. at 43.

Thus, the record confirms that Father refused or failed to perform parental duties for at least six months immediately preceding the filing of the termination petition on July 3, 2017. Father last saw Child in December 2015. Father did not file a petition requesting additional partial physical custody of Child, and he made only one request for phone contact, which occurred well before the start of the relevant six-month period. While it is true that Mother's refusal to facilitate Father's request for phone contact was an obstacle limiting his ability to perform parental duties, he made no effort at all to overcome that obstacle.

We next consider whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to subsection 2511(b).

> S[ubs]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, [subs]ection 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love,

> comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

In re Adoption of C.D.R., 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting In re N.A.M., 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

The orphans' court concluded that terminating Father's parental rights would best serve Child's needs and welfare. Order, 10/11/2017, at ¶ 13. The court found that Child has a bond with Stepfather, and rejected the possibility of any bond between Child and Father. Id. at ¶ 12-13. The court explained, "[Father] has not seen his child for a visit since December 24, 2015. He has had no phone contact. The [c]ourt does not need a bonding analysis to conclude that whatever bond there had been between the two does not now exist." Id.

Father argues that Petitioners failed to present sufficient evidence concerning the mental and emotional impact that terminating his parental rights would have on Child. Father's Brief at 7. Father emphasizes that Petitioners did not present the testimony of a mental health professional, or subject Child to a bonding assessment. Id. 14-15.

We again discern no abuse of discretion. It is well-settled that a subsection 2511(b) bond analysis does not require expert testimony or a formal bonding evaluation. In re D.L.B., 166 A.3d 322, 328 (Pa. Super.

2017) (citing In re Z.P., 994 A.2d 1108, 1121 (Pa. Super. 2010)). The orphans' court was free to rely on the observations of lay witnesses when conducting its analysis, or to reach its own conclusions based on the circumstances of the case.

Here, Child last saw Father in December 2015, when he was less than three years old. By the time of the termination hearing in September and October 2017, Child was over four and a half years old. Mother testified that Child does not ask about Father, and she did not believe that Child would even remember who he is. N.T., 9/27/2017, at 28, 33. Given Mother's testimony, and Father's complete absence from Child's life for nearly two years, the record supports the finding of the orphans' court that no bond exists between Father and Child.

Moreover, Mother testified that Child has developed a strong bond with Stepfather. Id. at 15. Child initially referred to Stepfather by his first name, J., but now refers to him as "Daddy [J.]" Id. It is clear that terminating Father's parental rights will best serve Child's needs and welfare, by allowing him to remain in a permanent, stable, and loving family.

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by terminating Father's parental rights to Child involuntarily. Therefore, we affirm the court's October 11, 2017 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/28/2018